UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| BRAND GROUP INTERNATIONAL, LLC, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 10-11783-JLT |
| | * | |
| ESTABLISHED BRANDS | * | |
| INTERNATIONAL, INC. and | * | |
| PERSEUS, LLC, | * | |
| | * | |
| Defendants. | * | |

MEMORANDUM

July 26, 2011

TAURO, J.

I.  Introduction

This action arises out of an agreement between Brand Group International, LLC ("Plaintiff") and Established Brands International, Inc. ("EBI"). Specifically, Plaintiff entered into a written agreement ("Agreement") with EBI to manage all aspects of EBI's international distribution of its Wegner and Swiss Gear branded footwear products.[1] Presently at issue is the Motion by Defendants Established Brands International, Inc. and Perseus, LLC to Dismiss Counts II, VI and VII [#16]. For the following reasons, Defendants' Motion to Dismiss is ALLOWED IN PART and DENIED IN PART.

---

[1] Compl. & Jury Demand ¶ 9 [#1] [hereinafter Compl.].

II. Background[2]

Plaintiff is a Massachusetts corporation that specializes in developing and managing international and domestic distribution networks for branded footwear and apparel companies.[3] EBI, a California corporation, is a global developer of footwear, apparel, and accessory brands, and is also the exclusive licensee of Wegner and Swiss Gear branded products.[4] Perseus is a merchant bank and private equity fund management company that invests in a variety of industries.[5]

On about March 17, 2008, Plaintiff entered into a written agreement with EBI to manage EBI's international distribution of its Wegner and Swiss Gear footwear products.[6] Plaintiff secured distribution contracts with various distributors and retail groups in Canada, Mexico, and South America.[7] Shortly after entering into the Agreement, Plaintiff and EBI agreed to extend the Agreement for at least three additional years.[8] Plaintiff would continue to be paid a monthly management fee and be entitled to earn certain commissions based on the total net income earned

---

[2] Because the issues analyzed here arise in the context of a Motion to Dismiss, this court sets forth the facts as they are presented in Plaintiff's Complaint, see Trans-Spec Truck Serv., Inc. v. Caterpillar, Inc., 524 F.3d 315, 321 (1st Cir. 2008), and construe those facts in the light most favorable to Plaintiffs, see Pettengill v. Curtis, 584 F. Supp. 2d 348, 362 (D. Mass. 2008) (quoting Rodriguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 96 (1st Cir. 2007)).

[3] Compl. ¶¶ 1, 6 [#1].

[4] Compl. ¶¶ 2, 7 [#1].

[5] Compl. ¶ 8 [#1].

[6] Compl. ¶ 9 [#1].

[7] Compl. ¶ 10 [#1].

[8] Compl. ¶ 11 [#1].

2

by EBI.[9] Plaintiff would also be entitled to earn some commissions relating to EBI's operations out of Hong Kong.[10]

In March 2009, Plaintiff's CEO, Timothy Ouellette, and EBI's CEO, Ronald Page, discussed changing and extending the terms of the Parties' Agreement.[11] In June 2009, the Parties revised the monthly management fee to an adjustable rate that started at $20,000 per month and decreased each year as EBI developed a greater revenue stream from which Plaintiff would earn a percentage of commissions ("Revision").[12] The Revision was to take effect in July 2009. The Parties continued to work toward memorializing the agreed upon Revision via a written document.[13]

In or around June 2009, Perseus purchased a majority interest in EBI. EBI's CEO Page continued as CEO of EBI. Plaintiff hired additional full-time employees to develop a worldwide distribution network for EBI.[14]

In January 2010, Ouellette and Page agreed to revise the terms of the Parties' working relationship.[15] Plaintiff would receive a $15,000 monthly management fee, be reimbursed for all related travel expenses, and receive a 15% commission on international income collected from

---

[9] Compl. ¶ 11 [#1].

[10] Compl. ¶ 11 [#1].

[11] Compl. ¶ 13 [#1].

[12] Compl. ¶ 14 [#1].

[13] Compl. ¶ 14 [#1].

[14] Compl. ¶ 15 [#1].

[15] Compl. ¶ 17 [#1].

3

royalties that were paid by international distributors/licensees to EBI.[16]

In June 2010, Dave Davis, a Senior Managing Director for Perseus, replaced Page as CEO of EBI and assumed responsibility for EBI's daily operations.[17] Perseus then acquired a Minneapolis-based marketing company, Compass Marketing, Inc. ("Compass"), and merged Compass with EBI.[18] Davis told Ouellette that once the merger with Compass was complete, EBI would work toward memorializing the latest terms of the Parties' Revision.[19] Ouellette was appointed to two leadership teams within EBI.[20] Ouellette traveled to Minneapolis every week to meet with the teams in order to develop and refine EBI's international branding strategy.[21]

In late August 2010, EBI informed Ouellette that the Parties' Agreement was terminated.[22] EBI and Perseus had decided to bring management of distribution functions in-house with the help of Compass.[23] Plaintiff believes the termination was motivated by Defendants' desire to unfairly capitalize on Plaintiff's work and retain management fees and commissions that Plaintiff would earn through 2013.[24]

---

[16] Compl. ¶ 17 [#1].

[17] Compl. ¶ 19 [#1].

[18] Compl. ¶ 19 [#1].

[19] Compl. ¶ 19 [#1].

[20] Compl. ¶ 20 [#1].

[21] Compl. ¶ 20 [#1].

[22] Compl. ¶ 21 [#1].

[23] Compl. ¶ 21 [#1].

[24] Compl. ¶ 21 [#1].

4

Plaintiff sued Defendants EBI and Perseus on October 19, 2010, asserting seven causes of action. On December 16, 2010, Defendants filed a <u>Motion to Dismiss Counts II, VI and VII of Plaintiff's Complaint</u>.

III. <u>Discussion</u>

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a defendant to move to dismiss a claim for "failure to state a claim upon which relief can be granted."[25] To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "'state a claim to relief that is plausible on its face.'"[26] A claim is plausible on its face "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[27] Additionally, a court does not need to accept as sufficient allegations that are "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements."[28]

Defendants have moved to dismiss one count against Perseus and two counts against EBI.[29]

---

[25] Fed. R. Civ. P. 12(b)(6).

[26] <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009) (quoting <u>Bell Atlantic, Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)).

[27] <u>Id</u>. (citing <u>Twombly</u>, 550 U.S. at 556).

[28] <u>Id</u>. (citing <u>Twombly</u>, 550 U.S. at 555).

[29] Mot. Defs.' Established Brands Int'l, Inc. & Perseus, LLC Dismiss Counts II, VI, VII Pl.'s Compl., 1–2 [#16].

A.   Count VI – Perseus's Alleged Tortious Interference with Contractual and Advantageous Business Relations

In Massachusetts, "in an action for intentional interference with contractual relations, the plaintiff must prove that: (1) he had a contract with a third party; (2) the defendant knowingly induced the third party to break that contract; (3) the defendant's interference, in addition to being intentional, was improper in motive or means; and (4) the plaintiff was harmed by the defendant's actions."[30]

Plaintiff alleges that Perseus had knowledge of the Parties' Agreement and the Revision,[31] and that Perseus encouraged EBI to terminate the Agreement with Plaintiff.[32] Defendants argue that Plaintiff has merely alleged that Perseus interfered with its "own affairs."[33] In its Complaint, however, Plaintiff alleges that Perseus was a majority shareholder of EBI and interfered with the business relationship between Plaintiff and EBI.[34] Plaintiff does not claim that Perseus was the sole shareholder or only beneficiary of EBI's agreement with Plaintiff.[35]

Plaintiff has sufficiently pled facts to state a claim for tortious interference with a contractual relationship. Defendants' Motion to Dismiss Count VI is therefore denied.

---

[30] Platten v. HG Berm. Exempted Ltd., 437 F.3d 118, 130 (1st Cir. 2006) (citing G.S. Enters., Inc.v. Falmouth Marine, Inc., 410 Mass. 262, 272–73 (1991)).

[31] Compl. ¶ 43 [#1].

[32] Compl. ¶ 44 [#1].

[33] Mem. Supp. Mot. Dismiss Counts II, VI, VII Pl.'s Compl., 6 [#17].

[34] Compl.¶¶ 15, 21, 44 [#1].

[35] Pl.'s Brand Group Int'l, LLC's Opp'n Defs.' Mot. Dismiss Counts II, VI, VII Compl., 8 [18].

B.     Count II – EBI's Alleged Breach of the Implied Covenant of Good Faith and Fair Dealing

In Count II, Plaintiff claims that EBI breached the covenant of good faith and fair dealing implied in the Parties' Agreement when EBI unilaterally terminated the agreement without compensation.[36]

Massachusetts law recognizes that every contract implies good faith and fair dealing between the contracting parties.[37] The purpose of the covenant is to ensure that neither party interferes with the ability of the other to enjoy the fruits of the contract.[38] A breach of the implied covenant occurs when one party violates the reasonable expectations of the other.[39] Recovery under breach of the implied covenant of good faith and fair dealing requires "conduct taken in bad faith either to deprive a party of the fruits of labor already substantially earned or unfair leveraging of the contract terms to secure undue economic advantage."[40]

Claims for breach of the implied covenant of good faith and fair dealing are distinct from breach of contract claims and require additional factual allegations.[41] "It has become common practice by plaintiffs bringing breach of contact claims automatically to pursue claims for breach

---

[36] Compl. ¶ 27 [#1].

[37] Anthony's Pier Four, Inc. v. HBC Associates, 411 Mass. 451, 471 (1991) (quoting Warner Ins. Co. v. Comm'r of Ins., 406 Mass. 354, 362 n. 9 (1990)).

[38] Chokel v. Genzyme Corp., 449 Mass. 272, 276 (2007) (citing Anthony's Pier Four, 411 Mass. at 471–72).

[39] Chokel, 449 Mass. at 276 (citing Uno Rests., Inc. v. Boston Kenmore Realty Corp., 441 Mass. 376, 385 (2004)).

[40] Christensen v. Kingston Sch. Comm., 360 F. Supp. 2d 212, 226 (D. Mass. 2005) (citing Anthony's Pier Four, 411 Mass. at 471).

[41] Christensen, 360 F. Supp. 2d at 229.

7

of the covenant of good faith and fair dealing."[42]  But these claims are often "frivolous, baseless, and perfunctory, and become unjustifiably entangled in legitimate breach of contract claims."[43] Claims of a breach of the implied covenant should not become "automatic bedfellows of breach of contract claims."[44]

Without any indications of a lack of honesty, taking unfair advantage, or bad faith, merely having no "good" reason for terminating the contract is not sufficient to support a claim.[45]  In Massachusetts, a plaintiff must prove a lack of good faith, which can be inferred from the totality of the circumstances.[46]  The duty of good faith and fair dealing is limited to the manner of performance and does not concern pre-contractual negotiations.[47]

Defendants argue that Plaintiff has alleged a breach of contract and nothing more.[48]  In its Complaint, Plaintiff claims that its CEO, Timothy Ouelette, agreed to specific terms with EBI's CEO, Ronald Page, about the amount of monthly management fees and commissions to be paid to

---

[42] Id.

[43] Id.

[44] Id. at 228–29.

[45] Piantes v. Pepperidge Farm, Inc., 875 F. Supp. 929, 938 (D. Mass. 1995) (citing Gram v. Liberty Mut. Ins. Co., 385 Mass. 659, 667 (1981)).

[46] T.W. Nickerson, Inc. v. Fleet Nat'l Bank, 456 Mass. 562, 570 (2010) (citing Nile v. Nile, 432 Mass. 390, 398–99 (2000)).  See also Uno Rests., Inc., 441 Mass. at 385 n.5 (citing Nile, 432 Mass. at 398–99).  But see Sonoran Scanners, Inc. v. Perkinelmer, Inc., 585 F.3d 535, 541 (1st Cir. 2009) ("Establishing a violation of the covenant of good faith and fair dealing requires at least bad faith conduct." (internal citations omitted)).

[47] Noonan v. Wonderland Greyhound Park Realty LLC, 723 F. Supp. 2d 298, 350 (D. Mass 2010) (citing Uno Rests., Inc., 441 Mass. at 385).

[48] Mem. Supp. Mot. Dismiss Counts II, VI, VII Pl.'s Compl., 8 [#17].

8

Plaintiff through 2013.[49] Plaintiff claims that it relied on promises and representations made by Page when it continued to work through January 2010 to secure distribution agreements for EBI.[50] Plaintiff states that Ouelette and Page then agreed on a greater percentage of commissions to be earned by Plaintiff through 2013 and that Plaintiff would receive a management fee of $15,000 per month.[51]

Plaintiff's Complaint fails to state a claim for breach of the implied covenant of good faith and fair dealing. Plaintiff merely repeats its breach of contract allegations that are set out in Count I. That is insufficient.[52] Plaintiff simply alleges that EBI breached the implied covenant by unilaterally terminating the agreement without compensation.[53] Plaintiff claims that it relied on the Parties' Agreement as well as EBI's promises and representations in expanding its business and securing distribution agreements for EBI.[54] Plaintiff, however, does not claim that these promises and representations were false or made with a lack of good faith. Nor does Plaintiff claim that Defendants were acting in order to force certain concessions from Plaintiff.[55] Lack of

---

[49] Compl. ¶ 14 [#1].

[50] Compl. ¶ 16 [#1].

[51] Compl. ¶ 17 [#1].

[52] See Christensen, 360 F. Supp. 2d at 226–29 (dismissing plaintiff's claim for violation of the covenant of good faith and fair dealing where plaintiff did not allege her contract was breached in bad faith or for any reason other than budgetary and fiscal constraints).

[53] Compl. ¶ 27 [#1].

[54] Compl. ¶¶ 15–16 [#1].

[55] See Anthony's Pier Four, 411 Mass. at 473 (finding that Anthony's breached the covenant of good faith and fair dealing when it withheld approval of a building plan in an attempt to force the defendant to "sweeten the deal").

good faith can be inferred from the evidence, but that inference is made at the summary judgment stage.[56] Plaintiff still must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[57] Plaintiff's allegations, however, are conclusory and Plaintiff fails to plead how EBI lacked good faith. Count II is therefore dismissed.

C.      Count VII – EBI's Alleged Unfair Trade Practices

Courts have held that "'conduct in disregard of known contractual arrangements and intended to secure benefits for the breaching party constitutes an unfair act or practice for [Chapter 93A] purposes.'"[58] Courts have also recognized that whether something constitutes an unfair act may be difficult to determine on the basis of the complaint alone.[59] Whether an act or practice is unfair is determined from all the circumstances of a case.[60] Specific factual nuances of a case may require elaboration through discovery and development at trial.[61]

In Count VII, Plaintiff alleges that EBI made repeated misrepresentations and false

---

[56] See Noonan, 723 F. Supp. 2d at 349–50 (holding that summary judgment was precluded where there were facts in the record that gave rise to an inference of a lack of bad faith, constituting an issue of material fact).

[57] Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556).

[58] Arthur D. Little, Inc. v. Dooyang Corp., 147 F.3d 47, 55 (1st Cir. 1998) (quoting Anthony's Pier Four, 411 Mass. at 474).

[59] See Nader v. Citron, 372 Mass. 96, 105 (Mass. 1977), abrogated on other grounds by Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008).

[60] Herman v. Admit OneTicket Agency LLC, 454 Mass. 611, 616 (2009) (citing Duclersaint v. Fed. Nat'l Motrg. Ass'n, 427 Mass. 809, 814 (1998)).

[61] Nader, 372 Mass. at 105 (quoting DeCotis, 336 Mass. at 242).

promises in order to induce Plaintiff to continue to secure distribution contracts on EBI's behalf.[62] Plaintiff also claims that EBI negligently misrepresented material facts to Plaintiff surrounding the Parties' Agreement.[63] Plaintiff's Chapter 93A claim is based on some of the same allegations as its breach of contract claim. But where, as here, courts have recognized the difficulty in determining whether something is an unfair act based on the complaint alone, Plaintiff's allegations in Count VII are sufficient to state a claim. Here, Plaintiff's allegations are sufficient to withstand the Motion to Dismiss because Plaintiff's claims of EBI's misrepresentations and false promises to induce Plaintiff to perform work on its behalf are fact-specific and require further discovery and development to determine whether they constitute unfair acts or practices. Defendants' Motion to Dismiss Count VII is therefore denied.

IV. Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss [#16] is ALLOWED IN PART and DENIED IN PART. AN ORDER HAS ISSUED.

/s/ Joseph L. Tauro
United States District Judge

---

[62] Compl. ¶ 48 [#1].

[63] Compl. ¶ 39 [#1].